# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYTHELL J. THOMPSON, | 1:10-cv-00711 GSA |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## **BACKGROUND**

Plaintiff Sythell J. Thompson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 8 & 9.)

1

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed an application for supplemental security income benefits in March 2007, alleging disability beginning September 1996. AR 102-105. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 62-65, 68-73, 75-76. ALJ Stephen W. Webster held a hearing on February 25, 2009, and issued an order denying benefits on June 22, 2009, finding Plaintiff was not disabled. AR 14-22. On February 23, 2010, the Appeals Council denied review. AR 1-3.

**Hearing Testimony**

ALJ Webster held a hearing on February 25, 2009, in Fresno, California. Plaintiff appeared and testified; he was assisted by non attorney representative Anthony Gonzales.[3] Vocational Expert ("VE") Thomas Dachelet also testified. AR 23-50.

Plaintiff was fifty-four years old at the time of the hearing. AR 26. He is five feet nine inches tall and weighs 200 pounds. AR 27. He is not married and does not have any children. AR 27. He lives in a home with someone else. AR 27. Although he has a driver's license, for the last couple months, Plaintiff's mom has been driving him to the doctor's office or the store, as he has had car trouble. AR 28.

Plaintiff is able to take care of his personal grooming needs without assistance, and occasionally cooks and cleans. He does the laundry and sometimes does yard work. AR 28-29. Plaintiff watches about three to four hours of television a day, and occasionally uses the computer for about a half an hour at a time. AR 29. He visits with family and attends church. AR 29. He does not suffer from any problem that would interfere with his ability to sit or to stand. AR 36.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] The hearing transcript indicates Plaintiff was represented by "Anthony Gonzalez." ALJ Webster's findings state Plaintiff was represented by attorney "Aaron Leibovic." AR 14. The administrative record contains correspondence and documents indicating Plaintiff was in fact previously represented by "Al Leibovic." *See* AR 66-68, 77. However, it appears non attorney disability consultant Anthony Gonzales was charged with making the appearance for attorney Leibovic. *See* AR 99-100.

After earning a bachelor's degree in Industrial Arts, Plaintiff was employed as a teacher. He also holds a contractor's license although he did not attend school to obtain it. AR 30. More particularly, Plaintiff worked as an instructor in industrial arts and physical education. He also coached sports occasionally, such as football and basketball. AR 31. He last worked in this capacity in 1999 at Paso Robles High School. Plaintiff left this last position because he began to experience mental problems: "I couldn't function; I couldn't think straight, I was seeing things, I was hearing things, I was feeling things. And I just left my job after a couple weeks . . .." AR 36.

When Plaintiff was asked what other full time employment, lasting longer than six months, he had held within the previous fifteen years, he indicated that he had no other such work. AR 33. Following his application for benefits in March 2007, Plaintiff worked as a handyman, but the jobs did not even amount to once a week, and he has not performed any handyman work in the previous year. AR 30-31.

Plaintiff suffers from schizoaffective disorder and receives treatment at Fresno County Mental Health. He sees his psychiatrist or attends therapy about every two weeks. AR 34-35. When asked to explain his illness, Plaintiff indicated that he cannot "think straight," has trouble getting along with others, hears voices and believes he is being followed, and has anxiety or panic attacks. AR 35. With regard to the panic attacks, Plaintiff indicated that "[s]ometimes they're frequent, like once a week, sometimes they're spaced out, it varies." AR 35. Plaintiff described the voices as "like a radio, it just starts off just like a radio and it just keeps on going." The voices do not necessarily tell him to do anything, although he does hear his name being called. Now that he attends therapy, he does not do what "they say." AR 35. The medication he has been prescribed helps with the voices, however, the voices do not disappear altogether. AR 35.

Since 1996, Plaintiff has been institutionalized at various locations and facilities, including Atascadero and Patton state hospitals. The longest he stayed in such a facility was about ten months, but he cannot recall the precise year. AR 37. Plaintiff has not required emergency psychiatric treatment since applying for benefits in March 2007. AR 39. Related to

his stay at Patton State Hospital, Plaintiff was incarcerated when not institutionalized. On a separate occasion, Plaintiff was incarcerated on a reckless driving conviction. AR 40.

As of March 2006, Plaintiff was receiving regular mental health treatment at Fresno County Mental Health and he continues to receive treatment there. He saw psychiatrist Robert Ensom[4] and currently sees Dr. Archimedes Garcia. AR 38-39.

Plaintiff denied a problem with alcohol or drugs, but did indicate that he used to drink socially, but has not had a drink since 1999. Additionally, he has been told by his doctors not to drink given the medications prescribed. AR 40.

VE Thomas Dachelet indicated that Plaintiff's oral and written communication, interpersonal skills, and skills related to teaching, the use of hand tools, power tools, and other measurement tools, are transferable. AR 41.

The VE was asked to consider a hypothetical worker of Plaintiff's age, education and work history, who has no exertional or postural limitations, but who could have only occasional contact with coworkers and the public. AR 41. The VE indicated such an individual could not perform Plaintiff's past relevant work. AR 41. If the limitation regarding contact was regarding "in person" contact, the hypothetical worker could perform the work of a telemarketer, sedentary, SVP[5] of 3, DOT[6] 299.357-014, with approximately 25, 270 jobs available in California. AR 41-42. The hypothetical worker could also perform the work of a peddler, SVP of 2, DOT 291.457-018, or salesperson - demonstrator, light work with an SVP of 4, DOT 279.357-038. AR 42-43.

Later, the VE indicated that with regard to the telemarketer position and a limitation regarding contact, of the 12,741 job titles in the DOT, only three involved working alone or apart from others. AR 44.

When specifically asked by the ALJ about a night watchman position, the VE indicated he could not rule the position out and could "make that leap." A night watchman falls under the

---

[4]The doctor's name is misspelled in the transcript.

[5]"SVP" refers to specific vocational preparation.

[6]"DOT" refers to the Dictionary of Occupational Titles.

heading of security guard, light, SVP of 3, DOT 372.667-034, with a total of 71,629 position in California.  AR 45.  Next, the VE testified such a worker could perform the job of a flagger, light, SVP of 2, DOT 372.667-032, with approximately 800 available positions.  AR 45.

In a second hypothetical, the VE was asked to assume the same factors as indicated previously, however, the individual would be unable to complete an eight-hour workday or thirty-hour work week without interruption from psychologically based symptoms.  VE Dachelet indicated such an individual could not perform Plaintiff's past work, nor could such an individual perform any work as typically found in the regional or national economy.  AR 46-47.

Finally, in a third hypothetical, the VE was asked to assume the same factors as those present in the first hypothetical, coupled with the frequent inability to work with others in close proximity without being distracted by them, frequent inability to interact appropriately with the general public, frequent inability to tolerate normal stress levels, and the likelihood of an absence of about three work days per month.  The VE indicated that such an individual would be unable to perform Plaintiff's past work or any other work.  AR 47-48.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 167-392.  The medical evidence will be referenced below as necessary in this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 14-22.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 13, 2007.  AR 16.  Further, the ALJ identified schizoaffective disorder as a severe impairment.  AR 16.  Nonetheless, the ALJ determined that the severity of the Plaintiff's impairment did not meet or exceed any of the listed impairments.  AR 16-17.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform the full range of work at all exertional levels with a non exertional limitation to occasional contact with coworkers and the public.  AR 18-20.

Next, the ALJ determined that Plaintiff could not perform his past relevant work.  AR 21.  Nevertheless, based upon Plaintiff's age, education, work experience and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  Specifically, the ALJ found Plaintiff could perform the work of a telephone solicitor, security guard and flagger or school crossing guard.  AR 21-22.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which

1 exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ's findings are not supported by substantial evidence and are not free of legal error because the ALJ failed to give specific and legitimate reasons for discounting the opinion of Plaintiff's treating psychiatrist. (Doc. 14.)

## DISCUSSION

### *The ALJ's Consideration of the Medical Opinion Evidence*

Plaintiff argues that the ALJ erroneously rejected the opinion of his treating psychiatrist, Dr. Ensom. More specifically, he asserts the ALJ failed to provide specific and legitimate reasons for rejecting the expert's opinion. (Doc. 14 at 7-13; *see also* Doc. 19.)

**1.      Applicable Legal Standards**

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion

7

of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d at 506 n.4; *Gallant v. Sullivan*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752. Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

### 2.     Summary of Relevant Medical Evidence

Psychiatrist Melvin Morgan, M.D., prepared a Psychiatric Review Technique on June 6, 2007. He determined that Plaintiff's impairments were not severe, having considered listed categories 12.03, 12.04 and 12.06. AR 214. More particularly, Dr. Morgan opined that Plaintiff's schizoaffective disorder is a medically determinable impairment that does not satisfy the related diagnostic criteria of 12.03, his bipolar disorder is a medically determinable impairment that does not satisfy the diagnostic criteria of 12.04, and his panic disorder is a medically determinable impairment that does not meet the diagnostic criteria of 12.06. AR 215-218. Dr. Morgan did not complete the functional limitation portion of the review. AR 222.

A Case Analysis prepared by Natalie G. Marroquin[7] on June 8, 2007, notes the following: "53 yr old alleging mental illness [] has had [treatment] and is med compliant[, activities of daily

---

[7] Ms. Marroquin is not a physician.

8

living] not restricted[, mental status examinations] appear to be [within normal limits] and condition has improved since [treatment,] appears non severe agree?" AR 225-226.

The record reveals that psychiatrist Robert Ensom, M.D., treated Plaintiff through the Fresno County Mental Health[8] center from October 16, 2006 through September 19, 2007. AR 168-171, 229, 268, 287, 293-294, 351-356. Dr. Ensom's objective mental status examination revealed that on all but two occasions, Plaintiff's appearance, behavior, motor activity, sensory perception, cognition, speech, orientation, thought processes and content, mood, affect, intelligence, and insight and judgment were all normal or average. *See* AR 169-171, 229, 294. Regarding the two exceptions: on March 5, 2007, Plaintiff's mood was noted to be apathetic and mildly depressed; on September 19, 2007, his mood was anxious. AR 168, 293.

On October 15, 2007, Dr. Ensom completed a form entitled Mental Residual Functional Capacity Questionnaire. AR 351-356.[9] He had been treating Plaintiff for about one year; the diagnosis reflects schizoaffective disorder and GAF[10] score of 45. Plaintiff's prognosis was reported to be poor for improvement, yet fair for stability. AR 351. The doctor noted the prescribed medications help Plaintiff maintain his then-current mental health status. AR 351. Dr. Ensom noted the following symptoms and signs: apprehensive expectation; decreased energy; difficulty thinking or concentrating; emotional lability; generalized persistent anxiety; hallucinations or delusions; mood disturbance; paranoid thinking or inappropriate suspiciousness; perceptual or thinking disturbances; and persistent non-organic disturbance of vision, speech, hearing, use of a limb, movement and its control, or sensation. AR 352-353. The doctor noted no impairment as to understanding and memory. Regarding sustained concentration and persistence, Dr. Ensom noted Plaintiff was markedly limited in the areas of ability to work in

---

[8] Plaintiff also attended individual and group therapy sessions at Fresno County Mental Health. Those records were also reviewed by the Court.

[9] The form was provided to Dr. Ensom by Plaintiff's attorney with Health Advocates.

[10] The Global Assessment of Functioning or "GAF" scale reflects a clinician's assessment of the individual's overall level of functioning. *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 2000) ("DSM IV"). A GAF score of 41 to 50 indicates that the individual has "[s]erious symptoms … OR any serious impairment in social, occupational, or school functioning …." DSM-IV at 32.

coordination with or proximity to others without being distracted by them, and ability to complete a normal work-day and work-week, without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods. For purposes of the form, "marked" was defined as a "serious limitation" reflecting an "ability to function [that] is severely limited but not precluded." AR 354. The doctor also found Plaintiff to be markedly limited in the ability to interact appropriately with the general public, and in his ability to tolerate normal levels of stress. Dr. Ensom also opined that Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting and ability to travel to unfamiliar places or use public transportation. AR 355. The doctor noted that Plaintiff would have "'good' days and 'bad' days," and estimated he is likely to be absent three days per month as the result of his impairment, treatment or therapy. AR 355.

A Case Analysis prepared by pediatrician Ian Ocrant, M.D. on October 22, 2007, and subsequently reviewed and affirmed by A. Garcia, M.D., notes that a review of the record establishes Plaintiff suffers from depression and anxiety, but that mental status examination notes are unremarkable and indicate that Plaintiff has the ability to perform the activities of daily living. AR 269-270.

In late 2007 and 2008, Plaintiff was treated by Archimedes Garcia, M.D., and Kevin Marmolejo, M.D., at the Fresno County Mental Health center. The doctors' objective mental status examination findings were primarily normal or average. AR 275-277, 290-292. Plaintiff's mood was noted to be anxious on July 8, 2008, and his insight and judgment were noted to be marginally impaired on May 13, 2008. AR 277, 290.

### 3. ALJ's Findings

Here, ALJ Webster found as follows:

> On October 15, 2007, the claimant's then treating psychiatrist, Dr. Robert Ensom, completed a "check the box and fill in the blanks" form entitled "mental residual functional capacity questionnaire." The doctor indicated that his first patient contact was October 16, 2006, and the last contact was September 19, 2007. The doctor diagnosed schizoaffective disorder, and stated the prognosis was poor for improvement, but good for stability at this level. Asked to describe the treatment and response, the doctor said: "fair with regard to the medication which helps him to maintain at the current level." He then checked several symptoms, and checked some boxes indicating several areas of functioning that he

considered moderately or markedly limited.  He also checked a box indicating the claimant would have good days and bad days, a box indicating he would be absent from work about 3 days a month and a box indicating such a marginal adjustment that a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

As for the opinion evidence, I give little weight to the opinion of Dr. Ensom as embodied in his report of October 15, 2007.  The doctor simply checked some boxes and filled in some rather brief blanks, but did not support his opinion with any reasoning.  That opinion does not square with the evidence since the filing date of March 13, 2007.  I give substantial weight to the opinions of the State agency doctors, who reviewed the entire record and came to conclusions that are consistent with the record as a whole.  The psychiatric review technique form and the case analyses discuss the evidence which shows that since the filing date the claimant's symptoms have been pretty much controlled.  I believe their opinions are well considered and soundly based upon the record as a whole.

AR 20, internal citations omitted.

### 4. Analysis

The ALJ did not point to specific evidence in the record that contradicts Dr. Ensom's opinion.  The ALJ relied upon the opinion of Dr. Morgan, asserting the non-examining physician had reviewed the entire record.  That is not so.  In fact, Dr. Morgan prepared the psychiatric technique form *before* Dr. Ensom completed the form provided for a similar purpose.  Notably too, Dr. Ensom treated Plaintiff subsequent to Dr. Morgan's opinion.

Moreover, Dr. Ocrant - a pediatrician - prepared his case analysis a mere seven days after the date of Dr. Ensom's opinion.  It is not clear whether Dr. Ensom's October 15, 2007, opinion was even made available to Dr. Ocrant for review.  In fact, it appears Dr. Ocrant's review was primarily focused on whether or not there were physical versus psychological impairments - or exertional limitations - that would affect Plaintiff's ability to work.  Additionally, Dr. Garcia's review and acceptance of Dr. Ocrant's case analysis occurred just days later.  Neither Ocrant nor Garcia reference Dr. Ensom's October 15, 2007, report.

The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 0042 (9th Cir. 20047); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  Here however, Dr. Morgan could not have considered Dr. Ensom's opinion as his review of the record occurred months prior to the October 15, 2007, opinion rejected by the ALJ.  Further, it is unclear whether Dr. Ensom's opinion was a

part of the record reviewed by Drs. Ocrant and Garcia. Therefore, the ALJ's reference to consistency with the medical record is misplaced as it relates to evaluating the opinion.

      To the degree the Commissioner urges this Court to consider other reasons the ALJ may have relied upon to discredit Dr. Ensom's opinion - such as "Plaintiff's subjective statements, including those expressed during group therapy sessions" (Doc. 18 at 4) - the ALJ did not rely on this factor as part of his analysis and the Court is not permitted to make ad hoc rationalizations for the ALJ. *Barbato v. Commissioner of Social Sec. Admin.*, 923 F.Supp. 1273, 1276, n.2 (C.D. Cal. 1996). A court may not speculate as to the ALJ's findings or the basis of the ALJ's unexplained conclusions. *Lewin v. Schweiker*, 654 F.2d 631, 634-35 (9th Cir. 1981); *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) (a reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner) (citing *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)).

      In sum, this Court finds that the ALJ improperly relied only upon a nonexamining physician's opinion which was given prior to the treating physician' opinion. Other nonexamining physician opinions may have also involved an incomplete picture of the medical record as it relates to treating physician Ensom's opinion. As previously noted, the opinion of a nonexamining physician cannot, by itself, constitute substantial evidence justifying the rejecting of a treating physician. *Pitzer v. Sullivan*, 908 F.2d at 506 n.4. Thus, this Court finds the ALJ's rejection of Dr. Ensom's opinion is not supported by substantial evidence and is not free of legal error.

//
//
//
//
//
//
//
//

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Sythell J. Thompson and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **July 7, 2011**                    /s/ **Gary S. Austin**
                                   UNITED STATES MAGISTRATE JUDGE